## Theresa Friedman & Sons, Inc., v. Zoning Board of Adjustment

*Philip Sterling*, for petitioner.

*John A. Geisz*, for protestants.

WEINROTT, J., December 3, 1959.—Petitioner filed an application with the zoning administration seeking to erect a one-story addition to a preserve canning factory exclusively for warehousing its raw materials and processed products. The site of the proposed building is now a vacant lot on part of which a building contractor has a garage and stores his truck and heavy equipment outdoors. The other part of the vacant lot is immediately to the rear of the existing preserve plant. The present use of the ground occupied by said

contractor is established as a nonconforming use existing prior to the zoning ordinance. A use of this character would be permitted only in an area zoned general industrial. The land which is the subject of this appeal is zoned "D" residential. It is the intention of petitioner to use the proposed building for the storage of manufactured and processed jellies and materials necessary to petitioner's preserve processing plant. Such a use is permissible only in an area zoned limited industrial. The zoning board of adjustment denied the application and this appeal followed.

We have scanned the notes of testimony and examined the record of the proceedings before the zoning board of adjustment and find the facts of this case to be indeed unique. It appears from a statement of the board chairman, contained in the notes of testimony, that on February 17, 1955, the board approved the erection of an addition, an extension to the then existing preserve processing plant. Later in 1955 a private gasoline station for use in connection with said plant was approved by the board.

There were two technical objections applicable to the proposed use with regard to the area requirements. The rear yard minimum depth required by the zoning ordinance is 9 feet, whereas the proposed rear yard minimum depth would be 8 feet, and the total open area is required to be 16,445 square feet, whereas there would be available only 12,932 feet or 23.6 per cent remaining after construction of the proposed addition. While the zoning board of adjustment did not treat of this matter in its findings of fact and conclusions of law, precise compliance with the area requirements of the zoning ordinance was ordered by this court.

The evidence is conclusive and the board found as a fact that there was hardship to petitioner in that the vacant ground cannot feasibly be used for residen-

tial purposes in accordance with its "D" residential zoning classification. The controversy arises from the board's finding that the proposed use would be contrary to the general welfare of the public. It found that the proposed use would be offensive to the neighbors because of: (1) Obnoxious odors; (2) noise; (3) dirt and dust; (4) increased breeding of roaches, rodents and other insects due to the type of business conducted by applicant; and (5) increased traffic hazard due to the number of tractor trailer trucks that would come to and leave applicant's property at various hours of the day and night.

There is not a scintilla of evidence in the record before the zoning board of adjustment to relate a single one of these findings to the use proposed by appellant. Every protestant who appeared before the board to testify narrated a series of complaints which may be relevant to the existing rather than the proposed use. Even a cursory examination of the record before the zoning board of adjustment discloses that the objections of the neighbors were in the nature of a belated appeal from the action of the board in 1955 in permitting the erection of an addition extending the preserve processing plant.

Petitioner produced two recognized real estate experts who stated that the public interest would be served by the erection of the proposed addition. One testified that the open storage of the contractor's equipment is unsightly and constitutes an annoyance and nuisance when it is moved in and out. He pointed out that in his opinion an industrial building of modern architectural design would be an advantage in stabilizing the neighborhood and protecting it from incipient decay. His testimony was that the elimination of the contractor's equipment and replacing it with a use which petitioner proposes would substantially upgrade the neighborhood.

By reason of the nature of the testimony of protestants the zoning administrator, who is a member of the board, denoted the difference between the zoning problem before it and the operational aspects of the existing use, stating that he would ask his inspectors to view the plant from the standpoint of fire hazard, health, safety and air pollution.

How, on the basis of the record before it, four members of the board could deny the proposed use is without the comprehension of this court. The findings and conclusions are in the main strained and unrelated to the proposed use. In its conclusions of law the zoning board of adjustment described the area as a fine residential and commercial one. An examination of the photographs which are exhibits and form part of this record illustrates the obvious discrepancy between this statement and the facts observable on viewing the property.

Even more anomalous is the board's conclusion of law which characterizes the application as one to erect a building to extend a "presently existing illegal nonconforming preserve canning factory". Not only are the terms "illegal" and "nonconforming" contradictory, but they are also unrealistic in view of the prior section of the zoning board of adjustment in granting petitioner the right to erect a building extending the preserve processing plant and to operate a private gasoline station in conjunction with the industry.

We need not and do not consider whether the proposed use could qualify as an extension of a nonconforming use under the zoning ordinance. Scrutinizing the entire record we find no relevant evidence to sustain the finding of fact and conclusions of law to the effect that the proposed use is contrary to the public interest. Uncontradicted is the credible expert testimony in support of the position that the proposed use would be beneficial rather than detrimental to the

public. Upon full consideration of this matter we conclude that the original action of the zoning board of adjustment in denying petitioner's application was arbitrary and capricious and constituted a manifest and flagrant abuse of discretion.

In view of the foregoing we have heretofore entered an order directing that the zoning board of adjustment issue the requested permit. While the board issued this permit pursuant to the said order of this court, nevertheless an appeal was filed on behalf of protestants.